UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CURTIS D. SMITH, | Case No. 5:06 CV 2524 |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | Magistrate Judge James S. Gallas |

Following an administrative hearing and decision by a Social Security Administration's administrative law judge (ALJ) denying supplemental security benefits under Title XVI of the Social Security Act and the Commissioner's adopting this decision as the "final decision" by denial of review (See 20 C.F.R. §416.1481), Curtis D. Smith filed his complaint for judicial reversal under 42 U.S.C. §1383(c)(3).[1] The ALJ found that Smith was a person closely approaching advanced age (See 20 C.F.R. §416.963(d)) who had a 12th grade education and past relevant work history for work in a sawmill, oil and gas well roustabout, construction worker, warehouse driver/stocker, school bus driver and thrift store laborer (TR. 18). The ALJ found that Smith suffered severe impairments due to a long history of chronic back pain and depression and with a history of syncope of underdetermined etiology, and bilateral otitis media (TR. 18). However, the ALJ's assessment of Smith's residual functional capacity allowed for the physical performance of medium level work and the mental performance of simple and some more-complex work involving limited supervision,

---

[1] The parties consented to the jurisdiction of the Magistrate Judge for entry of judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.

5:06 CV 2524                                                                   2

limited contact with the general public and limited changes in routines or work processes. Based on these restrictions and vocational expert testimony from the administrative hearing, the decision was that Smith could not perform his past relevant work but that he could perform substantial gainful activity as a janitor (TR. 18, 361-62).

The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision. Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantiality is based upon the record taken as a whole. *Barney v. Secretary of Health and Human Services*, 743 F.2d 448 (6th Cir. 1984); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984). Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Secretary*, 893 F.2d 106, 108 (6th Cir. 1989); *Richardson*, 402 U.S. at 401.

> In determining whether the Secretary's factual findings are supported by substantial evidence, we must examine the evidence in the record 'taken as a whole.' *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980), and "must take into account whatever in the record fairly detracts from its weight." *Beavers v. Secretary of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464-65, 95 L.Ed. 456 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam).

*Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

*Mr. Walter's psychological report:*

Smith contends he was disabled and raises two challenges to the decision. The first is that the decision failed to adequately analyze the evidence of his psychological limitations from the report by Mr. Walter, M.A. (See TR. 222-226). This psychological workup appears to be related to the 2002 efforts of the State Bureau of Vocational Rehabilitation (See also TR. 221). Mr. Walter diagnosed major depressive disorder, recurrent, panic disorder without agoraphobia, possible personality disorder not otherwise specified and passive aggressive disorder and possible histrionic traits (TR. 226). He believed that psychotherapy might afford some stress relief but would not really improve employability. *Id.*

The administrative decision addressed Mr. Walter's report, pointing out the foregoing diagnoses, the finding of "surprisingly good basic academic skill levels" and the global assessment of functioning (GAF) score of 60 to 65, indicative of mild symptoms (TR. 15). Smith, however, argues that this was not enough. Smith complains that the decision did not offer any acknowledgment of the balance of the medical opinion which Smith contends supports a finding of disability. Smith points out that Mr. Walters found the possibility of a specific learning disability (TR. 223) and either depressive reactions or anxiety difficulties that impact on his willingness to take

5:06 CV 2524                                                                 4

risks, be creative and participate fully in social interactions. *Id.* He further stated that Smith appears to be a brittle personality who cannot tolerate much pressure and stress or frustration and that his blackout episodes likely have functional or psychological components that are triggered by stress or flight reactions (TR. 225). Smith focuses especially on Mr. Walters' "vocational projections" where he concludes that Smith is not able to participate in career development and full time employment and the focus should be on part-time employment or helping Smith qualify for some form of public assistance (TR. 225).

The Commissioner responds the decision did not discuss Mr. Walter's opinion because it was rendered in July 2002, more than 14 months before Smith filed his SSI application. However the ALJ did not reject Mr. Walters' report due to its age, rather the ALJ was citing this report, among others, to establish the history of Smith's mental impairments, and his reasons for not reopening the current application.( Smith had applied for supplemental security benefits in 1993. (TR. 19).

The failure to scrutinize Mr. Walters' report and opinion was not reversible error because Mr. Walters was not a treating physician. It is long established that consultative examiner's reports are not binding. See *Crisp v. Secretary of Health & Human Services*, 790 F.2d 450, 452 (6th Cir. 1986); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). More recently *Smith v. Commissioner of Soc. Sec.* explained that although *Wilson v. Commissioner of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004) required a decision to provide "good reasons" for rejecting the opinion of a treating physician, this requirement did not extend to consultative or nonexamining physicians. *Id.*, 482 F.3d 873, 876

5:06 CV 2524                                                                 5

(6th Cir. 2007). As a result, judicial review of the decision's handling of nontreating medical sources is evaluated on the basis of whether the conclusion is supported by substantial evidence. *Smith*, 482 F.3d at 876. Accordingly, the decision's failure to address in full the requirements of 20 C.F.R. §416.927(d) does not apply. [2] Then the issue whether the decision is supported by substantial evidence now depends upon whether the conclusion is supported by substantial evidence, which in this matter, it is not.

*Dr. Quinn's Residual Functional Capacity Assessment:*

This leads to the second argument asserting there was error because of the rejection of Smith's hypothetical question to the vocational expert and the vocational expert's response. Smith asked the vocational expert to assume the same vocational profile as the ALJ's but added the following nonexertional limitations for "the individual's ability to maintain concentration, persistence and [pace] but perform simple repetitive tasks, which do not require complicated or detail[ed] verbal instructions, procedures, would be moderately limited and would also have a moderate limitation in the individual's ability to withstand the stress and pressures associated with daily work activity, in a typical eight-hour day working 40 hours per week" (TR. 363). The vocational expert responded that "the combination of the moderate limitation to simple tasks and a moderate limitation to work activity could prohibit the job that identified or any other jobs on unskilled occupational base" (TR. 363).

---

[2] 20 C.F.R. §416.927(d)(2) provides: "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."

5:06 CV 2524                                                                6

The ALJ questioned Smith's counsel as to the source of these restrictions and was referred to Dr. Quinn's consultative report and conclusions (TR. 304-09). The ALJ would not permit that question to be given or the opinion allowed "because by definition, a moderate limitation is not in itself disabling in that *element* ." (emphasis supplied). The vocational expert then interjected that perhaps if the moderate limitation were quantified "that would make it easier for me to respond to your hypothetical." (TR. 364). Smith's counsel then argued that the assigned degree of limitation of "moderate" was compatible with the former definition of "often" and often in the Sixth Circuit has been defined as a benefit affected minimally one-third of the time to up to half the work day (TR. 364). Based on this definition of the term "moderate" the vocational expert responded again that that would eliminate the ability to perform substantial gainful employment. *Id.*

Ironically after this exchange, the decision, which denies benefits, adopts Dr. Quinn's conclusion, "that the claimant had moderately limited ability to maintain concentration, persistence, and pace, to perform simple, repetitive tasks, and to withstand typical work stresses and pressures, and only minimally limit the ability to understand, remember and follow instructions and to relate to others including coworkers and supervisors" (TR. 16). The ALJ found that the evidence is "consistent with the evaluations of . . . Dr. Quinn, and with the State Agency's Medical Consultant Assessments (see especially Exhibit 25F describing no more than moderate mental limitations." (TR. 17).

5:06 CV 2524                                                               7

It is understandable that Smith appeals the denial of social security benefits. The decision accepts the consultative opinion of Dr. Quinn and its corresponding mental residual functional capacity assessment prepared by the non-examining state agency physician (TR. 305-13), yet selectively excludes restrictions listed by Dr. Quinn and incorporated in the mental residual functional capacity assessment (TR. 17). As will be explained, though, the decision is the product of confusion by the ALJ as a result of the failure to distinguish between psychiatric review technique (PRT) and mental residual functional capacity assessment (MRFCA).

Smith also reinforces the confusion by relying on the case *Edwards v. Barnhart*, 383 F.Supp.2d 920 (E.D. Mich. 2005), which incorporates the holding from *Bankston v. Commissioner of Soc. Sec.*, 127 F.Supp.2d 820, 826 (E.D. Mich. 2000) that under the psychiatric review technique (PRT) a mental deficiency occurring "often" may not be consistent with substantial gainful employment and that "often" should logically be defined as 50 percent of the time. As the Sixth Circuit had explained, the PRT is

> . . .
>
> > The special procedure also requires that the ALJ rate the degree of functional loss resulting from the documental mental impairment(s). 20 C.F.R. §404.1520a(b)(3) (1992) [now 404.1520a(c)(3)]. There are four areas of functional loss which have been found especially relevant to the ability to work. They correspond to the paragraph B criteria of the various mental disorders listed in 20 §C.F.R. Pt. 404, Subpt. P, App. 1, and are known as the "B" criteria. The four areas are: activities of daily living, social functioning, concentration, persistence and pace; and deterioration or decompensation in work or work-like settings.[3]

---

[3] 20 C.F.R. §404.1520a has been revised and amended with respect to §404.1520a(b)(3) effective 9/20/2000. See Fed. Reg. 50, 746 (August 21, 2000).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1993). Of course since this matter involves a claim for supplemental security income, the counterpart regulations found in 20 C.F.R. §416.920a apply.

The first three areas of the "B" criteria are rated on the five point scale of "none," "mild, moderate," "marked" and "extreme." See §404.1520a(c)(4); §416.920a(c)(4). The last area, deterioration or decompensation in work or work-like settings, is rated on the four-point scale of "none," "one or two," or "three, four or more." *Id.* Prior to revision, former §404.1520a and §416.920a set the severity rating criteria for the third functional area (concentration, persistence, or pace) on a scale of "never, seldom, often, frequent, and constant." See 20 C.F.R. §404.1520a(b)(3)(1999). Smith argues to equate the present use of "moderate" with the former use of "often." This argument also fails to differentiate between a PRT and MRFCA.

The primary purpose of the PRT is to assess whether or not a claimant's mental restrictions meet or equal the listing of impairments. 20 C.F.R. §404.1520a(c)(3) and §416.920a(c)(3) refer to §12.00C of the Listing of Impairments of Appendix 1. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00C. Section 404.1520a(c)(4) and §416.920a(c)(4) explain that using the PRT ratings, ratings of none or mild in the first three functional areas and none in the last functional area indicate non-severe impairment. In all other instances, the ALJ must assess whether a "severe" mental impairment meets or equals a listed impairment, and then, if necessary, assess residual functional capacity and the ability to perform substantial gainful activity. See §404.1520a(d)(2)&(3); §416.920a(d)(2)&(3). These regulations, however, do not provide any detail on the criteria of this

5:06 CV 2524                                                              9

assessment of residual functional capacity, but only state that it is required. See §404.1520a(d)(3) and §416.920a(d)(3). Further, the provision for the MRFCA appearing in §12.00A of the Listings of Appendix 1 sheds little light on the subject. [4]

The criteria for MRFCA appear in §404.1545(c) and §416.945(c) are vaguely set out as, "limitations in understanding, remembering, and carrying out instructions and in responding appropriately to supervision, coworkers and work pressures in a work setting[.]" All of these tie in with SSR 85-16 which states in part that "Reports from psychiatrists and other physicians, psychologists, and other professionals working in the field of mental health should contain . . . a medical assessment describing ability to do work-related activities. These reports may also contain other observations and opinions or conclusions on such matters as the individual's failure to cope with stress, the ability to relate to other people, and the ability to function in a group or work situation." SSR 85-16 and see *Cheshire v. Commissioner of Soc. Sec.*, 2008 WL 681024 at *3 (N.D. Fla.).

---

[4]  If your impairment(s) does not meet or is not equivalent in severity to the criteria of any listing, you may or may not have the residual functional capacity (RFC) to do substantial gainful activity (SGA). The determination of mental RFC is crucial to the evaluation of your capacity to do SGA when your impairment(s) does not meet or equal the criteria of the listings, but is nevertheless severe.

RFC is a multidimensional description of the work-related abilities you retain in spite of your medical impairments. An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders when your impairment(s) is severe but neither meets nor is equivalent in severity to a listed mental disorder.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00a and see *Jones v. Massanari*, 2001 WL 34382025 at *13 (W.D.Wis. 2001); *O'Connor-Spinner v. Astrue*, 2007 WL 4556741 at *1 n. 3 (S. D. Ind.).

5:06 CV 2524                                                                 10

A MRFCA is necessary because the four functional areas of §404.1520a(c)(2) and §416.920a(c)(2), otherwise known as the "B-criteria" for purposes of §12.00C, and comprising the PRT, *i.e.*, activities of daily living, social functioning, concentration, persistence and pace, and episodes of decompensation" do not directly translate into residual functional capacity. As SSR 98-8p 1996 WL 374184 (SSA) states that the categories under the B criteria and C criteria regarding mental disorders in the PRT "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions considered under the broad categories found in paragraphs B and C of the Adult Mental Disorders Listings in 12.00 of the Listing of Impairments, and summarized on the PRTF." *Id.* at *4.

This ruling divides the regulatory framework into four areas of (1) understanding, carrying out instructions, (2) making simple work-related decisions; (3) responding appropriately to coworkers and supervisors, and (4) dealing with routine work changes. And see *O'Connor-Spinner* at *4. As for the 20 functions specifically addressed in the MRFCA, these are outlined in the program operations manual system (POMS) in DI 25020.010 "Mental Limitations". [5] Further, the prescribed mental residual functional capacity assessment form administratively prescribed for medical consultants appears under DI 24510.090 numbered SSA-4734-F4-Sup. This form is

---

[5] The POMS is the operational reference used by SSA staff to conduct SSA's daily business. "While these administrative interpretations [POMS] are not products of formal rulemaking, they nevertheless warrant respect . . ." *Washington Dep't of Soc. Servs. v. Keffeler*, 537 U.S. 371, 385 (2003). The POMS is available at http://www.ssa.gov/regulations/index.htm.

5:06 CV 2524                                                           11

substantially similar to the one utilized in this case. However there is one important point "[w]hile these [ ] mental abilities are labeled by the Commissioner as being needed for any job, no regulation requires the ALJ to perform a function-by-function assessment of claimant's residual functional capacity on each of these [ ] specific categories. SSR 96-8p requires only that the four broad categories listed in 20 C.F.R. §404.1445 and §416.945(c) be considered on a function-by-function basis." *O'Connor-Spinner*, 2007 WL 4556741 at *5 n 5. SSR 96-8p, 1996 WL 3741184 (S.S.A.)

It seems clear that at the administrative hearing there was confusion over whether the limitations on concentration, persistence or pace were a comment on the third functional area of the PRT or were part of the MRFCA. There is no explicit provision under §404.1545(c) and §416.945(c) or under 96-8p for consideration of "concentration, persistence or pace." The form SSA 4734-F4-Sup. and the one used in this case does provide a category for "sustained concentration and persistence." See POMS DI 24510.090.[6] Although there is no mention of concentration, persistence or pace under the regulation or its implementing ruling, the specific statements to be rated in this category of "sustained concentration and persistence" as prescribed by the Social Security Administration concern carrying out instruction using judgment, responding appropriately to supervision coworkers and workers and work situations. Thus prescribed format does not align with the regulation or ruling but it does request the findings based on these four areas of work-related function.

---

[6] The form prescribed provides for four broad categories of 1) understanding and memory, 2) sustained concentration and persistence, 3) social interaction and 4) adaptation. Under each category are statements the reviewer is required to rate as "not significantly limited," moderately limited," "markedly limited," "no evidence of limitation in this category" and "not ratable on available evidence."

5:06 CV 2524                                                                                    12

       Dr. Quinn in his conclusion rated Smith's psychological ability to relate to others, the ability to understand, remember and follow instructions, ability to maintain concentration, persistence and pace, ability to withstand stress and pressures associated with daily work activity and finally a gratuitous finding on Smith's ability to manage funds (TR. 309). The self-generated categories by Dr. Quinn do not perfectly align with the four broad categories from the MRFCA form, but they certainly do not match the four "B-criteria" and the doctor's elaboration clearly demonstrates that he is addressing residual functional capacity at step 4 of the sequential evaluation. He commented that the restrictions on ability to maintain concentration, persistence and pace related to performance of simple repetitive tasks which did not require complicated or detailed verbal instruction and procedures was moderately limited, the doctor was commenting not on concentration, persistence and pace as related to the "B criteria" but on the MRFCA ability to carry out instruction under §404.1545(c) and §416.945(c). Likewise Dr. Quinn's comments on the moderate limitation on the ability to withstand stress and pressure associated with daily work activity related to the functional limitation of "work pressures in a work setting" under the same regulations.

       It is easy to see how confusion could arise because the form prescribed by the SSA rearranges the regulatory and ruling criteria under new categories which do correlate with these criteria. Under the form's rearrangement much of the criteria of carrying out instructions, and responding to work pressure has been recategorized under "Sustained Concentration and Persistence." In accord with rearrangement the psychiatrist or psychologist is asked to rate:

    4.    The ability to carry out very short and simple instructions.

    5.    The ability to carry out detailed instructions.

    6.    The ability to maintain attention and concentration for extended periods.

    7.    The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.

    8.    The ability to sustain an ordinary routine without special supervision.

    9.    The ability to work in coordination with or proximity to others without being distracted by them.

    10.    The ability to make simple work-related decisions.

    11.    The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

In this matter the ALJ referred to Dr. Quinn's report and its correlating MRFCA and adopted these vocational restrictions. A vocational expert's opinion cannot constitute substantial evidence unless the expert *precisely* considers the particular physical and mental impairments affecting claimant. *Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987); *McMillan v. Schweiker*, 697 F.2d 215, 221 (8th Cir. 1983). *Howard v. Commissioner*, 276 F.3d 235, 239 (6th Cir. 2002). The ALJ is not required to propound a hypothetical question accepting all claimant's allegations as credible. *Varley*, 820 F.2d at 780. Rather the hypothetical question must be based upon factual assumptions supported by substantial evidence from the record. *Id.*

5:06 CV 2524                                                                14

Dr. Quinn's findings were already translated into vocational considerations as were those of the nonexamining state agency physician. Accordingly it is obvious that the hypothetical question propounded by the ALJ was incomplete. The hypothetical question propounded by Smith's counsel was consistent with Dr. Quinn's findings.

The final question is whether to remand for benefits or for reconsideration. In these circumstances it is clear that the evidence supporting disability is totally one-sided in favor of Smith. The valid hypothetical question presented to the vocational expert supports disability, although this is a strange situation because Dr. Quinn did not appear to believe that Smith was disabled. However under the circumstances, even though the ALJ may have been confused about the law and the functions he was to perform, Smith must be given the benefit of the situation since vocational opinion based on Dr. Quinn's MRFC establishes disability. There is no need for further translation of a PRT into an MRFC as the ALJ mistakenly believed.

## CONCLUSION

Based on the arguments presented in the record and the applicable law, the decision of the Commissioner denying supplemental security income was not supported by substantial evidence and must be reversed and remanded for award and calculation of benefits.

                                                          s/James S. Gallas
                                                             United States Magistrate Judge

Dated: March 31, 2008